IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CEON JONES,  )<br>  )<br>   Plaintiff,  )<br>  )<br>v.  )<br>  )<br>KILOLO KIJAKAZI,  )<br>ACTING COMMISSIONER OF  )<br>SOCIAL SECURITY  )<br>ADMINISTRATION,  )<br>  )<br>   Defendant.  )  | Case No. CIV-20-543-SM |

## MEMORANDUM OPINION AND ORDER

Ceon Jones (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A), 1382c(a)(3)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). *See* Docs. 20, 21.

Plaintiff asks this Court to reverse the Commissioner's decision and to remand the case for further proceedings because the Administrative Law Judge (ALJ) erred in considering the evidence when formulating the residual functional capacity[1] (RFC). Doc. 26, at 9-30. After a careful review of the record (AR), the parties' briefs, and the relevant authority, the Court agrees and

---

[1]   Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545 (a)(1), 416.945(a)(1).

therefore reverses and remands the Commissioner's decision for further proceedings. *See* 42 U.S.C. § 405(g).[2]

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to

---

[2]   Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

**C.     Relevant findings.**

**1.     Administrative Law Judge's findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 15-27; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found that Plaintiff:

(1)   had not engaged in substantial gainful activity since June 1, 2017, the amended alleged onset date;

(2)   had the following severe medically determinable impairments: intervertebral disc degeneration of the lumbar region (including lumbosacral spinal stenosis), healed right fifth metacarpal fracture status-post removal of intramedullary pin, and residuals from left wrist surgery;[3]

(3)   had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

---

[3]     The ALJ also found Plaintiff had the following non-severe impairments: coronary artery disease, hypertension, atherosclerotic heart disease, nicotine dependence, insomnia, lumbago, abdominal aortic aneurysm (without rupture), cyst of kidney (acquired), nerve root and plexus disorder, radiculomyelopathy, concussion, dyspnea, discoid lupus, malignant neoplasm of prostate, sciatic neuritis, chronic hepatitis C virus, arthritis, cannabis (marijuana) abuse, "mental impairments," depression, and post-traumatic stress disorder. AR 18-21.

3

(4) had the RFC to perform medium work with limitations to frequent stooping and frequent handling and fingering bilaterally;

(5) was able to perform his past relevant work as a medical supply specialist, janitor, and automobile assembler as actually and generally performed; and so,

(6) had not been under a disability from June 1, 2017, through the date of the decision.

*See* AR 18-27.

### 2. Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.")

(internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

> **B.    Issues for judicial review.**

Plaintiff contends the ALJ did not properly consider evidence related to both his mental and physical impairments—specifically his shoulder impairment, back impairment, and prostate cancer—when formulating the RFC. Doc. 26, at 9-30.

**III.   Analysis of the ALJ's decision.**

> **A.    The ALJ did not support his RFC analysis related to Plaintiff's mental impairments with substantial evidence.**
>
> > **1.   The ALJ's discussion of Plaintiff's mental impairments.**

In his discussion at step two, the ALJ summarized Plaintiff's July 6, 2017 consultative mental status examination with Dr. Gail Poyner, Ph.D. AR 19. The ALJ noted that Plaintiff drove to the appointment and arrived on time and unaccompanied. *Id.* (citing *id.* at 677). The ALJ also considered that Plaintiff denied seeing a mental health professional at the time of the exam and that Dr. Poyner reported Plaintiff "was oriented, evidenced good judgment, and was

able to abstractly reason, count backwards, and add numbers." *Id.* Further, the ALJ addressed that Plaintiff identified the U.S. President and three large U.S. cities and "had no evident memory problems." *Id.* Finally, the ALJ recognized Dr. Poyner's diagnosis of depression. *Id.*

The ALJ also gave great weight to the opinions of the state psychologists because their opinions that Plaintiff's mental condition was not severe was "well-supported by the evidence." *Id.* In support, the ALJ stated:

> The record shows that apart [sic] from occasional periods of impaired memory and concentration as well as depressed moods, overall mental examinations are normal and unremarkable, with a full orientation, normal speech, appropriate grooming and normal behavior. Further, the record shows [Plaintiff's] mental condition improves with medication. Therefore, the undersigned finds [Plaintiff's] mental impairments considered individually and in combination, are not severe. Using the Psychiatric Review Technique, the undersigned finds [Plaintiff] has depression (12.04) and post-traumatic stress disorder (12.15). The undersigned further finds that [Plaintiff's] depression and post-traumatic stress disorder, considered individually and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore non-severe.

*Id.* (internal citations omitted). Citing Plaintiff's daily activities and medical records, the ALJ found Plaintiff had mild limitations in the four functional areas. *Id.* at 19-20.

In his discussion at step four, the ALJ summarized Plaintiff's May 19, 2017 phone call with a SSA representative, a May 22, 2017 function report,

and a September 6, 2017 function report. *Id.* at 23-24 (citing *id.* at 288-91, 292-99, 326-42). In these reports, Plaintiff reported his symptoms including those related to his mental impairments. The ALJ also noted that on March 16, 2018, one of Plaintiff's attorneys alleged Plaintiff was being treated for mental issues and that Plaintiff was currently taking no medications. *Id.* at 24 (citing *id.* at 352-58). The ALJ discussed Plaintiff's testimony at the hearing—including an assertion that "medication takes the edge off to where he is okay to be around people." *Id.*

The ALJ generally found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." *Id.* Related to his mental impairments, the ALJ cited a May 10, 2017 face-to-face interview with an SSA employee in which Plaintiff reported no difficulty "reading, . . . understanding, coherence, concentrating, talking, answering, . . . or writing." *Id.* at 25 (citing *id.* at 270). The ALJ also noted that Plaintiff had not been hospitalized for more than 24 hours due to an exacerbation of his mental symptoms and that during the period at issue, Plaintiff reported to treatment "alert and in no acute distress." *Id.* (citing *id.* at 492, 669, 752). The ALJ further found Plaintiff was "able to

7

engage in robust activities of daily living" including preparing meals, shopping in stores, attending church, and spending time with family. *Id.*

### 2. The ALJ engaged in impermissible picking and choosing.

Plaintiff argues the ALJ insufficiently discussed his mental impairments at Step Four.[4] Doc. 26, at 7-24. The Court finds the ALJ erred by citing evidence indicating Plaintiff's mental impairments were not significant while ignoring evidence to the contrary.

"It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). While "an ALJ is not required to discuss every piece of evidence," he must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly

---

[4] Plaintiff also argues the ALJ improperly relied on his step-two finding of non-severity when he determined Plaintiff had no functional limitations resulting from his mental impairments. Doc. 26, at 7; *see Wells v. Colvin*, 727 F.3d 1061, 1068-69 (10th Cir. 2013) ("[A] conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five."). The Court, however, need not determine whether the ALJ sufficiently discussed his step-four decision regarding Plaintiff's mental impairments because the ALJ did not support his conclusion that Plaintiff had no limitations with substantial evidence. *See Wells*, 727 F.3d at 1069 ("[W]e need not determine whether the [step-four] discussion was procedurally adequate, because the ALJ's conclusions on this point were not supported by substantial evidence.").

probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3) ("We will consider all evidence in your case record. . . .").

The record contains evidence of treatment for Plaintiff's mental impairment at NorthCare from December 2017 through October 2018. AR 684-744, 774-79. The ALJ did not specifically discuss the NorthCare records. But he cited portions of the NorthCare records at step two when he weighed the state agency psychologist's opinions and analyzed the paragraph B criteria. *Id.* at 19-20 (citing records from Exhibit 11F). The ALJ cited these records to show: Plaintiff enjoyed a visit with his daughter and grandchildren despite alleging he isolates from others; Plaintiff's mental condition improves with medication; Plaintiff had appropriate grooming; and that despite occasional periods of impaired memory and concentration as well as depressed moods, Plaintiff's "overall mental examinations are normal and unremarkable, with a full orientation, normal speech, appropriate grooming, and normal behavior." *Id.* (citing *id.* at 689, 702, 704, 714, 728-29, 730, 732). That said, other parts of the NorthCare record are less favorable to the ALJ's decision.

The decision did not include findings from his initial NorthCare mental status examination that noted Plaintiff had limited daily functioning, was compulsive, and had "flight of ideas." *Id.* at 689-91. He also had trouble

9

thinking, concentrating and with his short- and long-term memories. *Id.* at 689-90. Plaintiff continued to have trouble with memory and concentration at later appointments. *Id.* at 698, 720 (January 11, 2018 and August 9, 2018 appointments). He also reported feeling hypervigilant and paranoid. *Id.* at 736.

The ALJ did not discuss the results of December 12, 2017 and August 9, 2018 questionnaires indicating Plaintiff had severe depressive symptoms and extreme trauma reactions. *Id.* at 685-86, 698 (scoring 22 on his PHQ-9 on both dates and a 61 and 71 on his PCL-5). The ALJ also did not address Plaintiff's treatment plan, which included medication management and group rehabilitation. *Id.* at 696. Throughout Plaintiff's course of treatment, his Prozac dosage was increased as his mood did not improve or even worsened. *Id.* at 720, 722, 726. And, despite his medication, his treatment records at NorthCare point to a depressed or anxious mood more often than not. *Compare id.* at 698, 718, 720, 724, 728, 740, 777 (notation of depressed or anxious mood or a complaint of depression or anxiety), *with id.* at 733, 738, 742, 747 (reporting normal mood). Additionally, Plaintiff's sleeping issues required changes in medication and increased dosages over the course of Plaintiff's treatment. *Id.* at 698, 724, 726, 738. At one point, his doctor reported Plaintiff's condition worsened. *Id.* at 726.

NorthCare records also show that Plaintiff's trauma related to the murder of his son as well as two combat tours with the United States Army. *Id.* at 685-86. This record contradicts the state agency psychologists' opinions—both of which the ALJ gave great weight and incorporated into the record—which noted that Plaintiff's depression "correlates to his physical impairments." *Id.* at 122, 155; *see also id.* at 19 (incorporating the narrative supporting the opinions into the record).

What's more, the ALJ improperly relied on Plaintiff's attorney's representation that Plaintiff was being treated for mental problems but was currently taking no medications. *Id.* at 24 (citing *id.* at 352-58). While the ALJ accurately described the representations of Plaintiff's then-counsel, those representations are belied by the record indicating Plaintiff was contemporaneously placed on a medication regimen for his mental conditions. *See id.* at 684-749.[5]

Additionally, and as noted above, the ALJ highlighted benign findings when addressing the consultative mental status examination. *Id.* at 19. But

---

[5] Plaintiff also argues the ALJ misrepresented his testimony when he wrote that Plaintiff "testified that the medication takes the edge off to where he is okay to be around people." AR 24. Instead, he notes that he testified his medication makes him "a little more apt to be around everyday people." Doc. 26, at 17-18 (citing AR 65). The Court does not find the ALJ misrepresented Plaintiff's testimony here.

the ALJ ignored more significant findings when reciting the evidence. For example, while the ALJ accurately noted Dr. Poyner's observation that "[t]here were no evident memory problems," he did not address Dr. Poyner's conflicting statement that Plaintiff's Montreal Cognitive Assessment (MOCA) score "appears to primarily [be] a function of some memory issues." *Id.* at 19, 678. Indeed, the ALJ did not address Plaintiff's score of 23 out of a possible 30 on the MOCA at all, which suggests mild cognitive impairment. *See Ireland v. Colvin*, 2014 WL 7185008, at \*4 (D. Kan. Dec. 16, 2014) (where speech-language pathologist "performed a [MOCA] of Plaintiff, who scored 23 of 30 on the assessment, suggesting mild cognitive impairment.") (citing http://www.mocatest.org/normative—data.asp (last visited Oct. 14, 2021)).[6]

On remand, the ALJ should properly consider the evidence—both positive and negative—of Plaintiff's mental impairments when formulating the RFC.

---

[6] The Commissioner argues any error is harmless because two of the jobs the ALJ found Plaintiff could perform "are unskilled . . . with relatively low mental demands." Doc. 30, at 12. Plaintiff contends a finding of harmless error would be inappropriate. Doc. 31, at 5-8. The Court agrees. On remand, the ALJ will have to formulate the RFC after properly considering the evidence. Because the Court is uncertain as to what limitations the RFC will contain on remand, it cannot "confidently say no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

## B. The ALJ did not properly consider Plaintiff's alleged limitations stemming from his prostate cancer.

The ALJ found Plaintiff's prostate cancer was a non-severe impairment. AR 18. Plaintiff contends the ALJ disregarded the effects of the condition at step four. Doc. 26, at 24-27. The Court agrees.

### 1. Evidence of Plaintiff's prostate cancer and related symptoms.

Plaintiff testified he had been diagnosed with prostate cancer in January 2018. AR 61. He began a forty-four-session proton therapy treatment for the condition fifteen days before the December 14, 2018 hearing. *Id.* at 61-62. Plaintiff testified he had issues urinating during the initial stages of treatment and had recently had a catheter inserted for nearly a week. *Id.* at 63. Plaintiff also testified that since June 2017 he had experienced other issues urinating— including occasional accidents when he could not "get to a facility" and he had a hard time "get[ting] started," "keep[ing] going," and "emptying." *Id.* Plaintiff also testified he had problems with defecation. *Id.* at 63-64.

The medical record corroborates Plaintiff's testimony. Medical records reflect that Plaintiff complained of urinary hesitancy two years before the onset date. *Id.* at 656. Urinary issues continued during the relevant period. On March 8, 2018, Plaintiff complained of "frequent urination and difficulty controlling his bladder." *Id.* at 756. An August 2018 radiation oncology

consultation record indicates Plaintiff "was having some urine issues with his flow starting and stopping as well as getting up at [bedtime] frequently." *Id.* at 770. And 2018 records from NorthCare convey he had painful or incomplete urination. *Id.* at 741, 776.

### 2. The ALJ failed to analyze the limiting effects of Plaintiff's symptoms.

The ALJ found "malignant neoplasm of prostate" to be a non-severe impairment at step two. *Id.* at 18-19. But when "assessing [a] claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe." *Wells*, 727 F.3d at 1065 (emphasis omitted). At the end of his step-two discussion, the ALJ noted that he "considered all of [Plaintiff's] 'severe' impairments and all of [Plaintiff's] 'non-severe' impairments, in combination" when formulating the RFC. AR 21. Despite this representation, the ALJ's discussion at step-four was inadequate.

The Court finds the ALJ did not properly consider Plaintiff's subjective symptoms related to his urinary symptoms. In evaluating a claimant's subjective symptoms, an ALJ follows a two-step process: (1) consider whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the alleged pain or other symptoms; and (2) evaluate the intensity and persistence of those symptoms to determine any

functional limitations. SSR 16-3p, 2017 WL 5180304, at *2-3 (Oct. 25, 2017). In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ is to "examine the entire case record, including the objective medical evidence; [claimant's] statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in [claimant's] case record." *Id.* at *4.

Here, the ALJ found Plaintiff had prostate cancer, but did not evaluate the intensity and persistence of its symptoms. As noted above, Plaintiff testified he had urinary symptoms related to his prostate cancer at the hearing and records from multiple providers reflect Plaintiff made similar complaints at his medical appointments. Yet the ALJ did not discuss Plaintiff's alleged symptoms or medical evidence in support of this finding at step two. Nor did the ALJ reference Plaintiff's prostate cancer or related symptoms in his formulation of the RFC. AR 22-26. Thus, the Court finds the ALJ did not "expressly consider whether or how Plaintiff's [prostate cancer] affect[ed] [Plaintiff's] functioning and provided no explanation for [his] rejection" of any related functional limitation and reversal is warranted. *Cooper v. Berryhill*, CIV-17-69-CG, 2018 WL 1315452, at *3 (W.D. Okla. Mar. 14, 2018); *see also Williams v. Berryhill*, No. CIV-18-576-STE, 2019 WL 333570, at *3 (W.D. Okla.

Jan. 25, 2019) (finding that the ALJ erred by failing to "discuss the effect of the incontinence on the RFC at step four," even where the ALJ provided four rationales for finding the impairment non-severe at step two).

The Commissioner admits the ALJ did not address Plaintiff's prostate cancer when formulating the RFC, but contends failing to do so did not amount to error because "there was little period-relevant evidence pertaining" to the condition and "[n]one of Plaintiff's treating doctors opined that he was at all limited by prostate cancer." Doc. 30, at 13. Even so, as noted above, Plaintiff reported urinary problems to multiple doctors in 2018—during the relevant period. The Commissioner also contends the ALJ did not err because "[n]one of Plaintiff's treating doctors opined that he was at all limited by prostate cancer." *Id.* at 14. In support, the Commissioner cites *Azpeitia v. Saul*, where the Court found an ALJ did not err by failing to reference a non-severe impairment at step four because the claimant did not "point to any medical opinion suggesting such limitations existed" and the state agency medical experts attributed no physical or mental limitations as a result of the condition or its symptoms. Case No. CIV-19-810-SM, 2020 WL 3105415, at *3 (W.D. Okla. June 11, 2020). But unlike in this case, the ALJ in *Azpeitia* discussed the claimant's allegation of symptoms resulting from the condition (although not the condition itself). *Id.* And here, the state agency medical experts made their opinions before

16

Plaintiff's diagnosis of prostate cancer and did not address any urinary symptoms in their explanations. AR 115-27, 143-61. Thus, the Commissioner's argument is unavailing.

On remand, the ALJ should properly consider Plaintiff's alleged urinary symptoms related to prostate cancer and consider what, if any, functional limitations result.[7]

### C. The ALJ should have considered MRI and x-ray reports related to Plaintiff's back and wrist impairments.

Plaintiff contends the ALJ should have discussed a July 12, 2016 MRI which "revealed decreased intervertebral disc space height at all levels of [Plaintiff's] spine, most prominent at L4-5." Doc. 26, at 29 (citing AR 2577). He notes that his physicians found the MRI results showed severe degenerative disc disease with varying degrees of central canal stenosis and neural foraminal narrowing. *Id.* (citing AR 2578). Plaintiff also asserts other imaging showed he suffers from a marked deformity in his wrist. *Id.* (citing AR 452, 509, 559).

---

[7] Plaintiff contends the ALJ should have addressed the effects of prostate cancer because his difficulties "would require additional breaks during a workday." Doc. 26, at 27. Whether Plaintiff has such a limitation is for the ALJ to determine on remand.

The ALJ did not specifically address the MRI and x-ray reports which included significant findings related to Plaintiff's severe impairments. Instead, the ALJ focused on positive findings from Plaintiff's physical examinations. AR 25. As noted above, "it is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman*, 362 F.3d at 681. Thus, the ALJ erred by failing to address these records.

The Commissioner argues the imaging reports pre-date the relevant period. Doc. 30, at 14. But the timing of the record does not foreclose Plaintiff's argument that the ALJ should have considered the evidence. "[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).

The Commissioner also contends the ALJ adequately discussed the records because state-agency physician Dr. Sean Neely, D.O., considered the MRI results and x-rays of Plaintiff's wrists and the ALJ incorporated Dr. Neely's opinion and accompanying written statement into the decision. Doc. 30, at 14-15 (citing *id.* at 26, 175-78). Even assuming the ALJ's incorporation

of the written statement into the record amounts to proper consideration of the records, Dr. Neely did not address the July 9, 2015 x-ray of Plaintiff's left wrist showing "marked deformity of the wrist." AR 178, 452.

Finally, the Commissioner also noted that the ALJ discounted Plaintiff's subjective complaints of disability as inconsistent with other evidence in the record. Doc. 30, at 14. This position is not well founded because it tacitly endorses picking and choosing.

On remand, the ALJ should consider and address the adverse MRI and x-ray reports when formulating the RFC assessment.

### IV. Conclusion.

Based on the above, the Court reverses and remands the Commissioner's decision for further proceedings.

**ENTERED** this 19th day of October, 2021.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE